**James G. Nealon, III, Esquire**
Nealon Gover & Perry
2411 North Front Street
Harrisburg, PA 17110
(717)232-9900
Attorney ID #46457
jnealon@ngplawfirm.com

**Steven R. Snyder, Esquire**
2411 North Front Street, Suite 200
Harrisburg, PA 17110
(717) 238-9130
Attorney ID Number 90994
steve.law@comcast.com

Attorneys for the Plaintiff

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| J. M. <br>    Plaintiffs <br><br>   v. <br><br> ROBERT J. PAVLOVICH, JR., <br> JACOB J. STOSS, JR., and <br> MARYSVILLE BOROUGH <br>    Defendants | Docket No. <br><br> CIVIL ACTION – AT LAW <br><br> JURY TRIAL DEMANDED |

**COMPLAINT**

*PARTIES*

1. Plaintiff, J.M. is an adult individuals who currently resides in, Dauphin County, Pennsylvania. This Complaint is being filed using a

pseudonym to protect her right to privacy. Her interest in privacy outweighs the public's right to know. Plaintiff will identify her full name to Defendants upon service of the Complaint.

2. Defendant, Robert J. Pavlovich, Jr., ("Pavlovich") is an adult individual who currently resides at 3920 Gettysburg Road, Camp Hill, PA.

3. Defendant, Jacob J. Stoss, Jr., ("Stoss") is an adult individual who currently resides at 151 Lambs Gap Road, Marysville, PA 17053.

4. Defendant, Marysville Borough ("Marysville") is an incorporated Borough located in Perry County, Pennsylvania with its principle business offices and police department located at 200 Overcrest Road, Marysville, PA. 17053.

## JURISDICTION AND VENUE

5. This action is brought pursuant to 42 U.S.C. §1983 and jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1343. J.M. further invokes the pendent jurisdiction of this Court to hear and decide claims under state law.

6. The amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in this district pursuant to 28 U.S.C. §1391 because it is where all the parties reside and where the events complained of occurred.

## FACTUAL BACKGROUND

8. For seven years, beginning in 2000, Pavlovich was employed as a police officer with the Marysville Police Department.

9. Prior to his employment with Marysville, Pavlovich was employed on the Police Department of Manheim Township, Lancaster County, Pennsylvania.

10. In 1995, while a member of the Manheim Township Police Department, Pavlovich was charged with indecent assault on a 13-year-old girl and corruption of minors.

11. As a result of the charges, Pavlovich was fired from the Manheim Township Police Department.

12. In 1999, Pavlovich began working as a police officer in Duncannon, but was fired that same year as a result of two complaints about sexual misconduct with minors.

13. In 2000, Pavlovich was hired as a police officer with Marysville Borough.

14. Beginning in or about the fall of 2000, when J.M. was sixteen years old, Pavlovich began to approach her and ask her to meet him late at night in order to have sex with him.

15. When J.M. would drive through Marysville Borough, Pavlovich would pull her over for alleged traffic violations and use the opportunity to harass her, asking her to meet him late at night in order to have sex with him. Each time Pavlovich would stop J.M. he made remarks and innuendos of a sexual nature and continually gave her business cards with his telephone number on them and ask her to call him late at night or to meet him.

16. Pavlovich would repeatedly park his police car near J.M.'s house and wait for her to come outside when he would then approach her and ask her to meet him late at night. J.M. became afraid to leave her house and would take alternative routes home in order to avoid Pavlovich's sexual advances

17. Pavlovich told J. M. that he wanted her to meet him to go to bars and drink with him and told her he could furnish her with a false identification.

18. Often when Pavlovich stopped J.M. he would hug her and touch her. On one occasion, Pavlovich was in his police car and chased

J.M. in her car, as she attempted to elude him, at a high rate of speed. When J.M. got to her house and attempted to leave the car and run into the house, Pavlovich grabbed her in front of her house. When J.M.'s mother came out to find out what had happened, Pavlovich told the mother he was joking with her.

19. Finally, J.M. told her mother of Pavlovich's continued harassment and sexual advances, and her parents went to a Marysville Borough Council meeting to report the illegal conduct by Pavlovich.

20. In spite of J.M.'s parents' report to the borough at an official meeting, no action was taken to investigate or discipline Pavlovich and no charges were filed.

21. After J.M.'s parents reported Pavlovich's continued harassment to the Borough, Police Chief Stoss told the parents there was nothing he or the Borough could do without proof. When the parents asked if they should have their daughter attempt to tape record the sexual advances, Stoss told the parents that Pavlovich's conduct was not that serious.

22. After J.M.'s parents reported Pavlovich's conduct to the Borough, he continued to harass her and make sexual advances to her.

23. From the time J.M. was sixteen years old until Pavlovich was suspended from the Marysville Police Department in 2007, and even after J.M. had gotten married and moved out of her parents home, Pavlovich continually and systematically harassed, terrorized and made sexual advanced to J.M.

24. During his employment as a Marysville police officer, Pavlovich also committed statutory rape, involuntary deviate sexual intercourse, sexual assault, indecent assault, unlawful contact with minors, corruption of minors and bribery involving fourteen other underage girls.

25. Pavlovich used his position as a Borough police officer to make threats of prosecution for unrelated offenses, or offer not to prosecute unrelated criminal offences, in order to commit sexual battery, indecent sexual assault, and statutory rape against numerous other underage girls.

26. Pavlovich used Borough computers to tell minor girls to sneak out of their homes and meet him in the middle of the night to perform sex acts with them.

27. Pavlovich would leave the borough for hours at a time, while on duty and in his borough police car, to visit the homes of underage

girls in order to commit sexual battery, indecent sexual assault, and statutory rape.

28. Numerous parents of underage girls contacted Marysville Police Department about Pavlovich's sexual misconduct; however no investigations were made, disciplinary action taken or charges filed by the Borough against Pavlovich.

29. Members of Marysville Borough Council and Stoss were aware of Pavlovich's dismissal from the Manheim Township Police Department and the Duncannon Police Department, and of the charges filed against him for indecent assault on a 13-year-old girl and corruption of minors when they hired him.

30. Finally, the mother of one girl, who Pavlovich had made sexual advances to, contacted the Pennsylvania State Police, who began an investigation.

31. During the time that Pavlovich committed the various illegal acts, Stoss was aware of complaints of Pavlovich's illegal sexual conduct but conducted no investigation, took no disciplinary action nor filed any criminal charges against Pavlovich.

32. In March 2007, after an investigation was started by the Pennsylvania State Police and the Pennsylvania Attorney General's Office, Marysville Borough finally placed, Pavlovich on paid leave.

33. In September 2006, Perry County District Attorney Charles Chenot asked the state attorney general's office to investigate complaints about Pavlovich.

34. On October 25, 2007, after a special statewide grand jury investigation in Harrisburg, Pavlovich was arrested and charged with involuntary deviate sexual intercourse and sexual assault, two counts each of unlawful contact with a minor and bribery, four counts of indecent assault, and 14 counts of corruption of minors involving J.M. and 14 other girls, ages 12 to 17, including a mentally retarded girl, a girl with bipolar disorder who was sexually abused by a neighbor, and a girl with a broken arm.

**COUNT I**
**J.M. v. ROBERT J. PAVLOVICH, JR.**
**VIOLATION OF CIVIL RIGHTS**
**42 U.S.C.A. § 1983**

35. Paragraphs 1 through 34 above are incorporated herein by reference.

36. J.M. has a constitutionally protected right to liberty and personal security.

37 J.M. has a constitutionally protected right to substantive due process guaranteed under the Fourteenth Amendment of the United States Constitution.

38. Pavlovich, while on duty as a Marysville Police officer, wearing his police uniform, driving a borough police car, and utilizing borough police department computers, violated J.M.'s right under the Fourteenth Amendment of the United States Constitutional to substantive due process and J.M.'s right to liberty and personal security when he made indecent sexual advances, assaulted, harassed, and terrorized J.M. in an attempt to sexually assault and statutorily rape her.

39. Pavlovich, violated J.M.'s Fourteenth Amendment substantive due process rights and J.M.'s right to liberty and personal security when, under the color of state law, he used his position as a borough police officer to coerce, assaulted, harassed, and terrorized J.M. and when he made indecent sexual advances toward J.M. in an attempt to sexually assault and statutorily rape her.

40. The conduct of Pavlovich was willful, wanton and outrageous, thereby entitling J.M. to an award of punitive damages.

WHEREFORE, Plaintiff, J.M. demands judgment against Defendant, Robert E. Pavlovich, Jr., for an amount in excess of $75,000.00, exclusive of interest, costs, and attorney's fees.

## COUNT II
## J.M. v. MARYSVILLE BOROUGH AND JACOB J. STOSS, JR.
## VIOLATION OF CIVIL RIGHTS
## 42 U.S.C.A. § 1983

41. Paragraphs 1 through 40 above are incorporated herein by reference.

42. At all relevant times, Stoss was the Chief of Police of the Marysville Police Department.

43. Stoss was responsible for the hiring of Pavlovich as well as his supervision and discipline.

44. Marysville and Stoss violated J.M.'s Fourteenth Amendment substantive due process rights and J.M.'s right to liberty and personal security when, under the color of state law they hired Pavlovich despite knowledge of his prior terminations for sexual misconduct from the Manheim Police Department and Duncannon Police Department.

45. Marysville and Stoss received complaints from J.M.'s parents about Pavlovich coercing, assaulting, harassing, terrorizing and

attempting to sexually assault J.M. and numerous complaints from other Borough residents regarding Pavlovich, committing sexual assault and sexual abuse of children, after he was hired by Marysville and took no action to investigate, or charge Pavlovich with any crime or misconduct.

46. Marysville and Stoss failed to properly supervise Pavlovich despite knowledge of his prior terminations and complaints from Borough residents.

47. Marysville and Stoss violated J.M.'s Fourteenth Amendment substantive due process rights and J.M.'s right to liberty and personal security when, under the color of state law they hired Pavlovich, knowing of his history of sexual misconduct, failed to properly supervise Pavlovich, failed to properly investigate the complaints of J.M.'s parents and other Borough residents and failed to investigate, discipline, or charge Pavlovich for the offenses.

48. The harm suffered by J.M. was foreseeable by Marysville and Stoss in hiring and failing to supervise an officer with a known history of sexual assault and abuse of children.

49. The harm suffered by J.M. was the direct result of Marysville's hiring and failing to supervise or investigate an officer with a known history of sexual assault and abuse of children.

50. The conduct of Marysville and Stoss manifested a willful disregard and deliberate indifference for the safety of J.M. and all residents of the Marysville Borough.

51. As a direct and foreseeable result of Marysville's maintaining a police department and of Stoss and Marysville hiring Pavlovich knowing of his history of sexual assault and abuse of children and Stoss and Marysville's failure to investigate complaints, Stoss and Marysville created the opportunity, that otherwise would not have existed, for Pavlovich to coerce, assaulted, harassed, terrorized and make indecent sexual advances toward J.M. in an attempt to sexually assault and statutorily rape her.

52. The conduct of Marysville and Stoss was willful, wanton and outrageous, thereby entitling J.M. to an award of punitive damages.

WHEREFORE, Plaintiff, J.M. demands judgment against Defendants, Marysville Borough and Jacob J. Stoss, Jr., for an amount in excess of $75,000.00, exclusive of interest, costs, and attorney's fees.

### COUNT III
### J.M. v. ROBERT J. PAVLOVICH, JR.
### SOLICITATION AND ATTEMPTED SEXUAL BATTERY, ATTEMPTED INDECENT SEXUAL ASSAULT, AND ATTEMPTED STATUTORY RAPE

53. Paragraphs 1 through 52 are incorporated herein by reference.

54. A person commits an attempt under the Pennsylvania Crimes Code, (18 Pa.C.S.A. § 901), when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime.

55. A person is guilty of solicitation to commit a crime under the Pennsylvania Crimes Code, (18 Pa.C.S.A. § 902), if with the intent of promoting or facilitating its commission he commands, encourages or requests another person to engage in specific conduct which would constitute such crime or an attempt to commit such crime or which would establish his complicity in its commission or attempted commission.

56. Attempt and solicitation, under the Pennsylvania Crimes Code, (18 Pa.C.S.A. § 905), are crimes of the same grade and degree as the most serious offense which is attempted or solicited.

57. Sexual assault, a felony of the second degree under the Pennsylvania Crimes Code, (18 Pa.C.S.A. § 3122.1), is committed when a person engages in sexual intercourse with a complainant under the age of 16 years and that person is four or more years older than the complainant and the complainant and the person are not married to each other.

58. Involuntary deviate sexual intercourse, felony of the first degree under the Pennsylvania Crimes Code (18 Pa.C.S.A. § 3123) is committed when a person engages in deviate sexual intercourse with a complainant...who is less than 16 years of age and the person is four or more years older than the complainant and the complainant and person are not married to each other.

59. Aggravated indecent assault, a felony of the second degree under the Pennsylvania Crimes Code (18 Pa.C.S.A. § 3125) is committed when, a person engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body, if the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

60. A person commits the crime of harassment under the Pennsylvania Crimes Code, (18 Pa.C.S.A. § 2709) when, with intent to harass, annoy or alarm another, the person strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same; or follows the other person in or about a public place or places; or engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose.

61. A person commits the crime of stalking under the Pennsylvania Crimes Code, (18 Pa.C.S.A. § 2709) when he engages in a course of conduct or repeatedly commits acts toward another person, including following the person without proper authority, under circumstances which demonstrate either (1) an intent to place the person in reasonable fear of bodily injury; or (2) an intent to cause substantial emotional distress to the person.

62. Pavlovich did solicit and attempt to commit sexual battery against J.M. when he, a thirty-nine year old male did knowingly solicit and attempt to commit sexual intercourse and other illegal sexual acts with J.M. who was at the time a sixteen year old minor and not related by marriage and by statute unable to give her consent.

63. Pavlovich did solicit and attempt to commit, indecent sexual assault, against J.M. when he, a thirty-nine year old male did knowingly and intentionally solicit and attempt to engaged in sexual intercourse and other illegal sexual acts with J.M. who was at the time a sixteen year old minor and not related by marriage and by statute unable to give her consent.

64. Pavlovich did solicit and attempt to commit statutory rape, against J.M. when he, a thirty-nine year old male did knowingly and

intentionally solicit and attempt to engaged in sexual intercourse and other illegal sexual acts with J.M. who was at the time a sixteen year old minor and not related by marriage and by statute unable to give her consent.

65. As a direct result of the solicitation and attempt to commit sexual battery, indecent sexual assault, and statutory rape, J.M. has suffered damage in the form of server emotional distress and will continue to suffer the emotional pain and suffering that is the direct result of Pavlovich's illegal, predatory, terroristic and unconscionable sexual conduct against her.

66. Pavlovich did commit the crime of harassment against J.M. when, he continually and intentionally harassed, coerced, and made sexual advances toward her, and subjected her to continued attempts and threatens to sexually assault and statutorily rape her and when he continually and systematically followed her in or about the Marysville Borough; and engages continually in said course of conduct and repeatedly committed said acts which serve no legal purpose.

67. Pavlovich did commits the crime of stalking against J.M. when he engages in the conduct set forth in paragraphs 66 and did repeatedly commit said acts toward J.M., including following her without proper authority and for the purpose of sexually assaulting and statutorily

raping her, which were under circumstances which clearly demonstrate an intent to place J.M. in reasonable fear of bodily injury and an intent to cause substantial emotional distress to J.M..

68. The conduct of Pavlovich was willful, wanton and outrageous, thereby entitling J.M. to an award of punitive damages.

WHEREFORE, Plaintiff, J.M. demand judgment against Defendant, Robert E. Pavlovich, Jr., for an amount in excess of $75,000.00, exclusive of interest, costs, and attorney's fees.

Respectfully submitted,

**NEALON GOVER & PERRY**

1/2/08

By:_____
James G. Nealon, III, Esquire
Attorney I.D. #46457
2411 North Front Street
Harrisburg, PA 17110
(717) 232-9900

01/02/08

_____
Steven R. Snyder, Esquire
Attorney I.D. #90994
2411 North Front Street, Suite 200
Harrisburg, PA 17110
(717) 238-9130